UNITED STATES DISTRICT COURT Eastern District of Kentucky
EASTERN DISTRICT OF KENTUCKY     FILED
LEXINGTON

MAR 0 2 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 04-429-KSF

STEPHEN AND AMY WATERFILL                                          PLAINTIFF

V.                          **OPINION & ORDER**

NATIONAL MOLDING CORPORATION                                       DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on defendant's motion for summary judgment [DE #20]. Having been fully briefed, this matter is ripe for review.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On September 25, 2003, Plaintiff Stephen Waterfill fell from a deer stand located in a tree in Harrodsburg, Mercer County, Kentucky. As a result of this fall, Mr. Waterfill suffered a fractured hip and right elbow. Mr. Waterfill asserts that due to his injuries, he has minimal use of his right arm.

Mr. Waterfill claims that the deer stand he was using that day was manufactured by a company named "Loggy Bayou". Mr. Waterfill described the deer stand as a "lock-on" stand which came equipped with a rope device to secure the stand to the tree. In his deposition, Mr. Waterfill testified that the deer stand was situated approximately fifteen to twenty feet above the ground. On September 25, 2003, Mr. Waterfill climbed up to the tree stand and then attached a safety belt to the tree which he positioned around the middle of his back.

The deer stand used by Mr. Waterfill did not come equipped with a safety harness or

strap. Instead, the safety strap Mr. Waterfill was using at the time of the incident came with a previous deer stand which he had purchased from Buck Pro Ambusher. This safety strap consisted of a nylon strap assembly and molded plastic buckle. According to Mr. Waterfill, the nylon webbing strap attached around his waist and was fed through the plastic buckle twice. The webbing tightened around his waist when he pulled down upon it.

Mr. Waterfill testified that he had been sitting in the deer stand for approximately two and one-half hours when he fell from the tree stand. Mr. Waterfill believes that he fell asleep and then woke up when he began to roll forward out of the deer stand. The safety strap caught Mr. Waterfill and swung him under the tree. The strap held him in a perpendicular position to the tree for a moment before he fell to the ground. Mr. Waterfill testified that he recalled that both the nylon safety strap and the plastic buckle broke when he fell; however, he is unsure of which component broke first.

Defendant National Molding Corporation ("National Molding") manufactured the molded plastic buckle component of the safety strap, but did not manufacture any of the other components which made up the safety harness and deer stand used by Mr. Waterfill. National Molding is in the business of designing and producing molded plastic products. The plastic buckle at issue here is a Duraflex buckle, a brand of specialty buckles and fastener hardware.

National Molding subjects its Duraflex buckles to strength testing periodically throughout the year. However, it is National Molding's policy that the suitability of the Duraflex buckle for a particular assembly must be verified by the equipment manufacturers who intend to use the buckles in their assemblies.

National Molding sells its Duraflex brand buckles to distributors who, in turn, sell the

2

buckles to third parties. National Molding is not involved in the subsequent sale of the buckles and does not engage in any business dealings with the customers who purchase the buckles from the distributors. National Molding has sent out numerous warnings to its distributors that the Duraflex buckles were not intended to be used in a product intended to provide safety or protection to any person. For example, the following warning notification is included with the Duraflex buckles sold to distributors:

> **WARNING: THIS PRODUCT IS NOT FOR USE IN ANY PRODUCT INTENDED TO PROVIDE SAFETY OR PROTECTION TO ANY PERSON.**
>
> You must independently evaluate the suitability of, and test each product for their use in your application. National Molding Corporation disclaims any liability resulting from its use. National Molding Corporation's only obligations are those in our Standard Terms and Conditions of Sale and in no case will National Molding be liable for an incidental, indirect, or consequential damage arising from the sale, resale, use or misuse of its products.

In their complaint, Plaintiffs alleged that National Molding is strictly liable or negligent for failing to properly design or manufacture the Duraflex buckle and that it is strictly liable or negligent for failing to warn and instruct concerning the proper use of the buckle and other defects. Plaintiffs also assert that National Molding breached the express or implied warranty that the buckle was merchantable and fit for the ordinary purposes for which such a product is used.

## II. ANALYSIS

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

3

party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

**B.    Summary Judgment Is Proper on Plaintiffs' Claims that National Molding Failed to Warn End-Users of the Finished Product of the Potentially Dangerous Nature of its Parts under the Component Parts Doctrine**

Kentucky law is settled that a component part manufacturer has no duty to warn end-users of the finished product of the potentially dangerous nature of its parts in that product. In

4

*Worldwide Equipment, Inc. v. Mullins,* 11 S.W.3d 50 (Ky.App. 1999), the Kentucky Court of Appeals held that the manufacturer of a cab-chassis, which when modified and incorporated by third parties caused injuries to the plaintiff, did not have a duty to warn end-users of the dangers posed by the cab-chassis. The Court of Appeals stated, "[I]n light of the abundant number of possible vehicles the cab-chassis could ultimately become, we believe, . . ., that to expect, much less require, [the cab-chassis manufacturer] to monitor a cab-chassis throughout its useful life imposes too great a burden on a manufacturer." *Id.* at 57. Ultimately, the court concluded, "[W]e are of the opinion that a manufacturer similarly situated to [the defendant], in that the manufacturer merely produced a component part, or unfinished product which by law could not be placed in service, and which comported to acceptable state of the art industry standards and practice at the time of manufacture, cannot be held liable under the strict liability of failure to warn. *Id.* at 57-58. *See also Childress v. Gresen Mfg. Co.*, 888 F.2d 45, 49 (6th Cir. 1989) ("[A] component part supplier has no duty, independent of the completed product manufacturer, to analyze the design of the completed product which incorporates its non-defective component part.").

Here, National Molding only manufactured the Duraflex plastic buckle and played no role in the manufacture of the other components which made up the safety harness and deer stand. Plaintiffs have presented no evidence that National Molding at any time analyzed the design of the completed safety harness which incorporated its Duraflex plastic buckle. Accordingly, the Court finds that the component parts doctrine dictates that National Molding had no duty to warn end-users of any potential problems arising from the use of the Duraflex buckle in the safety harness.

5

### B. Summary Judgement Is Proper on Plaintiffs' Claims that Defendant is Liable for Failing to Properly Design or Manufacture the Duraflex Buckle Because Plaintiff Has Presented No Evidence that the Duraflex Buckle Was a Defective Product

Kentucky has adopted Section 402A of the Restatement (Second) of Torts, which states that a product is defective for purposes of the application of strict liability if it is "in a defective condition unreasonably dangerous to the user or consumer or his property." *Worldwide Equipment*, 11 S.W.3d at 55. In their response to the Defendant's motion for summary judgment, Plaintiffs state that there is strong evidence that the Defendant's product was defective. However, Plaintiffs do not present any evidence supporting this contention.

In fact, the record reveals that the Duraflex buckle has been purchased throughout the past ten years by over two dozen independently operated distributors worldwide. (Anscher Aff., p. 2). Plaintiffs have not presented any evidence that these buckles are not properly designed for these purchasers or that prior to their incorporation into other products that they are unreasonably dangerous. Furthermore, Plaintiffs have not even shown that the Duraflex buckle was unreasonably dangerous when incorporated into the safety harness and deer stand at issue in this case. Mr. Waterfill testified that he is unsure whether the buckle or the nylon strap actually broke first. (Waterfill depo., p. 53). Thus, it is unclear whether the nylon strap broke causing the buckle to break or if the buckle was somehow dangerous when incorporated into the safety strap.

Even if Plaintiffs are able to prove that the buckle was dangerous once it was incorporated into a finished product, a component part supplier cannot be held liable on a common law design or manufacturing defect theory, unless the supplier exercised some control over the final product's design. *See Jacobs v. E.I. DuPont de Nemours & Co.*, 67 F.3d 1219, 1242 (6th Cir.

6

1995). Plaintiffs have produced no evidence that National Molding exercised some control over the design of the final product – the safety harness. Plaintiffs have not contested National Molding's representation that it is not involved in the subsequent sale of the buckles in the stream of commerce after they have been sold to the distributors and it does not engage in any business dealings with the customers who purchase the buckles from the distributors. (Anscher aff., p. 2). Thus, Plaintiffs' failure to demonstrate that National Molding's buckle was defective and/or unreasonably dangerous in and of itself, or that National Molding influenced the design of the safety harness, warrants entry of summary judgment on the § 402A design/manufacturing defect claim.

C. **Summary Judgment in Favor of the Defendant is Proper on Plaintiffs' Breach of Warranty Claim**

Under Kentucky law, contract liability for breach of warranty is governed by the terms of the contract and the statutory provisions of Kentucky's Uniform Commercial Code. *See Williams v. Fuller*, 695 S.W.2d 411, 413 (Ky. 1985). A contract, commercial or otherwise, is limited by its terms, except to the extent that it must conform to statute. If liability is based on sale of the product, it can be extended beyond those persons in privity of contract only by some provision of the Kentucky Uniform Commercial Code. *Id.* The only provision of the Uniform Commercial Code extending breach of warranty in injury cases is KRS 355.2-318. Kentucky courts have concluded that privity of contract must by adhered to in order for liability to exist. *Id.* In other words, in order to maintain a cause of action for breach of warranty, as expressed through KRS 355.2-318, beneficiaries of implied warranties are limited to the purchaser and to "any natural person who is in the family or household of [the] buyer or who is a guest in his home." *Id.* at 414.

7

In the instant case, privity exists between National Molding and the purchasers of the Duraflex buckles. Since National Molding sold its Duraflex buckles to distributors, these distributors are the purchasers for purposes to ascertaining privity. Plaintiffs have not presented any evidence that they were in the family or household of the distributors or were a guest in one of the distributor's homes. Since the Kentucky Legislature has chose to limit actions for breach of warranty as provided in KRS 355.2-318 and Plaintiffs have not presented any evidence that privity exists between them and National Molding, summary judgment on Plaintiffs' breach of warranty claim is proper.

## III. CONCLUSION

For the reasons stated above, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that:

[1] the defendant's motion for summary judgment [DE #20] is GRANTED;

[2] judgment in favor of the defendant shall be entered contemporaneously herewith;

[3] the trial of this matter, currently set for March 21, 2006, is hereby SET ASIDE; and

[4] this is a final and appealable order.

This 2nd day of March, 2006.

KARL S. FORESTER, SENIOR JUDGE